UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA SAMUELS,

                  Plaintiff,

         v.

URBAN ASSEMBLY CHARTER SCHOOL
FOR COMPUTER SCIENCE d/b/a COMP SCI
HIGH and DAVID NOAH, individually,

                Defendants.

No. 23-CV-1379 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

     Plaintiff Melissa Samuels brings this action against her former employers, Defendants Urban Assembly Charter School for Computer Science and David Noah. Samuels alleges that, after sustaining an on-the-job injury and requesting temporary medical leave, Defendants terminated her employment, in violation of the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the New York Labor Law ("NYLL"), and the First Amendment. Now before the Court is Defendants' motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion is granted in part and denied in part. In particular, Defendants' motion to dismiss is denied as to all claims except for Samuels' retaliation claims brought under the NYSHRL and the First Amendment, which the Court dismisses.

## FACTUAL BACKGROUND

     The following facts are drawn from the Second Amended Complaint, which includes "materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sierra Club v. Con-Strux, LLC*, 911 F.3d 85, 88 (2d Cir.

2018).[1] For the purposes of this motion, the Court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Id.*[2]

Defendant Urban Assembly, a non-for-profit high school, and Defendant Noah, the school's founding principal, hired Samuels to be a math teacher in August 2021. *See* Second Am. Compl. ¶¶ 8–20. Since then, Samuels asserts that she "succeeded in her role," receiving a raise in 2022 and "never reciev[ing] any criticism or negative feedback regarding her work performance." *Id.* ¶¶ 22–24.

On June 9, 2022, one of Samuels' students "threw a hard ball that hit Samuels in the head, causing a concussion." *Id.* ¶ 25. Upon being struck, Samuels immediately reported the incident and her injuries to Defendants. *Id.* ¶ 33. Although Noah "instructed Samuels to not give the police any information about the student who had assaulted her," she nonetheless began reporting the incident to the police. *Id.* ¶¶ 34–35. Samuels asserts that Noah then physically confronted her, "approach[ing] her within a few inches of her face . . . and angrily ask[ing] if she really wanted to get a kid involved in the criminal justice system." *Id.* ¶¶ 35, 38. In response to Noah's alleged "attempt[] to prevent her from reporting the incident," Samuels "objected" and continued to report

---

[1] The Court will consider four documents that the complaint refers to and quotes from but does not attach as exhibits: (1) a June 10, 2022 email and doctor's note; (2) a June 11, 2022 email; (3) a June 12, 2022 email; and (4) a June 16, 2022 email. *See* Dkt. No. 26 ("Casparie Decl."), Exs. B, C, D; Dkt. No. 23 ("Second Am. Compl.") ¶¶ 45–49. The Court finds that the complaint incorporates by reference the June 11th email, given that it includes extensive quotations from this email, and its use of the document is "far more substantial than a mere passing reference." *See Trump v. Vance*, 977 F.3d 198, 210 n.8 (2d Cir. 2020); *see also* Second Am. Compl. ¶ 47. With regard to the remaining emails, Samuels relies heavily on them in supporting her claims, and the Court thus finds them to be integral. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) ("For a document to be considered integral to the complaint, the plaintiff must rely on the terms and effect of a document in drafting the complaint."); *Jacobson v. Conflict Int'l, Inc.*, No. 22-CV-10177, 2024 WL 1348863, at *4 (S.D.N.Y. Mar. 29, 2024) ("[C]ourts may . . . consider non-legal documents integral if they are necessary predicates for the claim."); *see also* Compl. ¶¶ 45–46, 48–49; Dkt. No. 27 ("Pl. Br.") at 8–11.

[2] Unless otherwise indicated, this opinion and order omits all internal quotation marks, citations, footnotes, omissions, emphases, and alterations in quoted text.

the incident to the police officers present. *Id.* ¶ 40. Soon after, Samuels left Urban Assembly in an ambulance and the school "disabled her school email and system access." *Id.* ¶¶ 42–43.

After being transported to the emergency room, *id.* ¶ 42, Samuels was allegedly "diagnosed with a head injury, neck pain, and concussion," *id.* ¶ 26. Her symptoms included blurred vision, which prevented her from "read[ing] from her phone or computer screen" and restricted her ability "to operate a car or navigate public transportation." *Id.* ¶¶ 27–28. For example, Samuels was "unable to drive herself to the hospital for a PET scan the day following her injuries." *Id.* ¶ 29. She also says that she experienced "severe, persistent head and neck pain," which "impacted her ability to bend her neck and rotate her head," including "even minor head and neck movements." *Id.* ¶ 30. Her head and neck pain also "impacted her ability to sleep, . . . read, concentrate, and think." *Id.* ¶¶ 31–32.

A day later, on June 10, 2022, Noah messaged Samuels: "I [h]ope your head is feeling better. I assume you're not coming in so you can recuperate." *Id.* ¶ 44. Samuels responded as follows: "After being as[s]aulted on campus I sought medical care, and was discharged this evening to recuperate. Please see the attached physician letter excusing me from work for ten days. This includes not being able to participate in tomorrow's Algebra 1 Regents Prep session." Casparie Decl., Ex. B.; *see* Second Am. Compl. ¶¶ 45–46. The email included an attached doctor's note from Malcolm Johnson MD, stating that "Melissa Samuels was seen and treated in our emergency department on 6/10/2022. Please excuse the absence. She may return to work on 6/21/2022. If you have any questions or concerns, please don't hesitate to call." Casparie Decl., Ex. B.

The next morning, on June 11, 2022, Noah sent Samuels a reply email:

> You were not assaulted. [A student] accidently hit you with a nerf ball while he was throwing it at [another student] in a raucous classroom. . . . [I]t was an accident, it

was a nerf ball, and he is a child in a school. It's one thing for him to face consequences or for you to ask to be moved out of the advisory. It's entirely another to make what I believe is a bad faith assault claim. . . . Your account was temporarily disabled because I was sincerely afraid that you were sharing a student's personal information without parental consent or cause[.] . . . I'm not sure why you are doing this, but if it's just to avoid coming to work, let's please talk. . . . I suggest a virtual meeting to come to a shared understanding about next steps[.] . . . In the unlikely event you are unable to meet until the 21st, please plan on meeting in my office at 8:15.

*Id.*, Ex. B.; *see also* Second Am. Compl. ¶ 47. The next day, on June 12, 2022, Noah emailed

Samuels again:

After further review of your doctor's note and consultation with our school's counsel, I will need further documentation to excuse your absence beyond Friday[.] . . . [B]eyond Friday, the note doesn't contain any indication of your condition and your request for an accommodation that involves not working at all for 10 days doesn't appear to be supported by the note (which, again, lacks a diagnosis or any details). I remain open to discussing the matter with you directly via phone or video chat so we can actually come to some shared understanding about what happened and what happens next. But, in the absence of such a conversation and further documentation, this week will have to be considered unpaid[.]

Casparie Decl., Ex. C; *see also* Second Am. Compl. ¶ 48. Four days later, on June 16, 2022, "while

Noah knew Samuels remained on medical leave recuperating from injuries," Defendants

terminated Samuels' employment. *Id.* ¶ 49. Noah sent Samuels the following termination email:

I haven't heard from you other than a brief email last Friday and you haven't responded to my several requests to speak. Comp Sci High is terminating your employment effective today. We are doing so out of concern for the safety of our students and families, and given your lack of communication and the several attendance issues you had in recent weeks (in which you left early without communication). . . . [P]lease either return your keys and computer via mail or drop them off[.]

Casparie Decl., Ex. D; *see also* Second Am. Compl. ¶ 49. Samuels also asserts that Defendants

"withheld approximately $1,700 from her final paycheck, which represented the approximate

value of a laptop it issued to Samuels, despite her having returned the laptop to Urban Assembly."

*Id.* ¶ 52.

4

On February 17, 2023, Samuels filed this action against Defendants, *see* Dkt. No. 1, and on March 1, 2023, she filed an amended complaint to correct an error in the corporate Defendant's name, *see* Dkt. Nos. 3, 22. Samuels filed a second amended complaint—the now operative complaint—on October 2, 2023. *See* Second Am. Compl. She principally asserts that Defendants unlawfully terminated her employment, bringing employment discrimination, failure to accommodate, and retaliation claims under the ADA, the NYSHRL, and the NYCHRL. She also alleges that Defendants retaliated against her under the NYLL § 740 and the First Amendment, and that Urban Assembly unlawfully deducted $1,700 from her wages in violation of the NYLL. Defendants now bring a motion to dismiss, arguing that Samuels fails to state a claim under any statute.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011). In answering this question, the Court must "accept as true all factual allegations . . . but [is] not required to credit conclusory allegations or legal conclusions couched as factual . . . allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 188 (2d Cir. 2020).

**DISCUSSION**

I.      **Employment Discrimination Claims**

Samuels first alleges that Defendants unlawfully discriminated against her because of her disability by terminating her employment while she recuperated from her injuries, in violation of the ADA, the NYSHRL, and the NYCHRL. *See* Second Am. Compl. ¶¶ 51, 54, 82, 104. Defendants argue that these claims should be dismissed because she does not plausibly allege that she was disabled as defined by the relevant statutes and because she did not provide medical documentation explaining the nature of her disability. *See* Dkt. No. 25 ("Def. Br.") at 1, 5–8. Samuels has, at this stage, stated an employment discrimination claim under all three statutes.

A.      **ADA Employment Discrimination Claim Against Defendant Urban Assembly**

Title I of the ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "The elements of [an employment discrimination] claim under the ADA are that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Davis v. New York City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015). Although "[a] claim for discrimination under the ADA is ultimately subject to the burden-shifting analysis" the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "to survive a motion to dismiss, [the plaintiff] need only allege facts to support her prima facie case." *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 32 (2d Cir. 2019); *see also Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) ("[A]

6

plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas* . . . to defeat a motion to dismiss."); *Germain v. Nielsen Consumer LLC*, 655 F. Supp. 3d 164, 182 (S.D.N.Y. 2023); *Evans v. New York City Dep't of Educ.*, No. 22-CV-7901, 2023 WL 8034449, at *6 (S.D.N.Y. Nov. 20, 2023).

As an initial matter, the parties do not dispute that Urban Assembly is subject to the ADA or that Samuels suffered an adverse employment action under the ADA.[3] Defendants do appear to dispute the three remaining elements of an employment discrimination claim: that Samuels is disabled within the meaning of the ADA; that she is qualified to perform the essential functions of the job (with or without reasonable accommodation); and that the adverse action was taken because of her disability. The Court considers each in turn.

### 1. Disabled Within the Meaning of the ADA

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A).[4] "[M]ajor life

---

[3] Given that the ADA "cannot provide for individual liability," Samuels properly brings her ADA claims against only the corporate defendant, Urban Assembly. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Garvey v. Town of Clarkstown, New York*, No. 13-CV-8305, 2018 WL 1026379, at *8 (S.D.N.Y. Feb. 22, 2018), *aff'd sub nom. Garvey v. Sullivan*, 773 F. App'x 634 (2d Cir. 2019). Samuels also plausibly alleges that Urban Assembly is subject to the ADA, since Urban Assembly is an educational non-profit corporation that "employ[s] more than 14 employees." *See* Second Am. Compl. ¶¶ 10–11; *Pavel v. Plymouth Mgmt. Grp., Inc.*, 198 F. App'x 38, 40–41 (2d Cir. 2006) (noting that the ADA applies to employers who have 15 or more employees); 42 U.S.C. § 12111(5). Moreover, because termination qualifies as an adverse employment action under the ADA, *see Limauro v. Consol. Edison Co. of New York, Inc.*, No. 20-CV-03558, 2021 WL 466952, at *7 (S.D.N.Y. Feb. 9, 2021), Samuels plausibly alleges that she suffered an adverse employment action, *see* Second Am. Compl. ¶ 49.

[4] Although the ADA includes alternative definitions for the term "disability," Samuels here appears to allege only an "actual disability" under § 12102(1)(A), as opposed to having a "record of such an impairment" under § 12102(1)(B) or "being regarded as having such an impairment" under § 12102(1)(C). *See Hamilton v. Westchester Cnty.*, 3 F.4th 86, 92 n.4 (2d Cir. 2021). First, Samuels does not assert that she "has a history of" any substantial impairment sufficient to allege a disability under the "record of" definition. *Sam-Sekur v. Whitmore Grp., Ltd.*, No. 11-CV-4938, 2012 WL 2244325, at *7 n.4 (E.D.N.Y. June 15, 2012). Second, the "regarded as" definition does "not apply to impairments that are transitory and minor," which include impairments "with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B). Given that Samuels does not allege that her injuries lasted—or were expected to last—over six months, and because she does not otherwise contend that her injuries were not "transitory and minor" as defined by the ADA, the Court construes her complaint as alleging only an "actual disability" under § 12102(1)(A). *See Sam-Sekur*, 2012 WL 2244325, at *7; *Hamilton*, 3 F.4th at 92 n.4.

activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." *Id.* § 12102(2)(A). The ADA also provides that the definition of disability "shall be construed in favor of broad coverage of individuals . . . to the maximum extent permitted by the [ADA's] terms." *Id.* § 12102(4)(A). For example, as set forth in the statute's implementing regulations, the term "substantially limits" is to be "construed broadly in favor of expansive coverage" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). "An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting," and the "primary object of attention in cases brought under the ADA should be whether . . . discrimination has occurred, not whether an individual's impairment substantially limits a major life activity." *Id.* § 1630.2(j)(1)(iii)–(iv). Accordingly, the Second Circuit has noted that "the substantial-limitation requirement in the definition of 'disability' is not an exacting one." *Woolf v. Strada*, 949 F.3d 89, 94 (2d Cir. 2020).

When Congress amended the ADA in 2008, it relaxed preexisting temporal requirements for establishing a disability under § 12102(1)(A). *Hamilton*, 3 F.4th at 92; *see* ADA Amendments Act (the "ADAAA"), Pub. L. No. 110-325, 122 Stat. 3553. Although the definition of "disability" was previously interpreted to require a "permanent or long term" impairment, today no such requirement exists. *Hamilton*, 3 F.4th at 92. A "disability" under the amended statute "now covers impairments lasting or expected to last less than six months" and "[t]he statute does not suggest that there is any duration that is too short." *Id.* at 93–94. "Put another way, [an] actual disability claim under the ADA cannot fail solely because [a plaintiff] did not allege a permanent or chronic disability." *Patterson v. EmblemHealth Inc.*, No. 22-CV-2177, 2023 WL 5671531, at *5 (S.D.N.Y.

Sept. 1, 2023). To determine whether a plaintiff has plausibly alleged that she is disabled, courts must instead conduct a "fact-specific inquiry." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 69–70 (2d Cir. 2014) (noting that whether an impairment substantially limits a major life activity depends on "the totality of the circumstances"); *see* 29 C.F.R. § 1630.2(j)(1)(iv) ("The determination . . . requires an individualized assessment.").

Samuels plausibly alleges that she is disabled within the meaning of the ADA. Accepting her factual allegations as true, as the Court must, *see Sierra Club*, 911 F.3d at 88, she has adequately pled a physical impairment that substantially limits at least one major life activity. After sustaining a "head injury, neck pain, and [a] concussion," which allegedly produced "severe, persistent head and neck pain," Samuels asserts that she was substantially limited in her ability to perform manual tasks, to see, to sleep, to read, to concentrate, and to think. Second Am. Compl. ¶¶ 26–32. To be sure, courts in this District have rejected similar ADA claims where a plaintiff simply provides "a bare recital of the statutory definition of disability without reference to any specific factual allegations of a substantial limitation to a major life activity." *Koonce v. Whole Foods Mkt. Grp., Inc.*, No. 22-CV-10418, 2023 WL 8355926, at *4 (S.D.N.Y. Dec. 1, 2023); *Zuckerman v. GW Acquisition LLC*, No. 20-CV-8742, 2021 WL 4267815, at *11 (S.D.N.Y. Sept. 20, 2021). Here, however, Samuels provides at least some specific examples of her substantial limitations: after the incident, she claims she "could not . . . read from her phone or computer screen," Second Am. Compl. ¶ 28, was "unable to drive herself to the hospital," *id.* ¶ 29, was "unable to perform even minor head and neck movements without severe pain," *id.* ¶ 30, and that her pain "prevent[ed] her from sleeping and frequently [woke] her from sleep," *id.* ¶ 31.[5] Taken

---

[5] Defendants argue that short-term injuries (including concussions) do not qualify as disabilities under the ADA, *see* Def. Br. at 1; Dkt. No. 28 ("Def. Reply Br.") at 3–4, but the cases Defendants cite rely on pre-ADAAA case law or outdated regulations, *see, e.g., Tongalson v. Dreyfus Serv. Corp.*, No. 04-CV-2308, 2005 WL 356805, at *4 (S.D.N.Y.

together, these allegations support a plausible inference that Samuels' injuries substantially limited her ability to perform major life activities. *See Patterson*, 2023 WL 5671531, at *5; *McCrae v. H.N.S. Mgmt. Co.*, No. 3:22-CV-217, 2022 WL 16635390, at *5 (D. Conn. Nov. 2, 2022). Although Defendants rightly note that Samuels' doctor's note fails to provide a medical diagnosis or identify a specific disability, *see* Def. Br at 6–7, at this early stage, Samuels' assertions are sufficient to "nudge [her] claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570. Accordingly, the Court finds that she plausibly alleges that she is disabled within the meaning of the ADA.

### 2. Qualified to Perform the Essential Functions of the Job

The ADA also requires a plaintiff to plausibly allege that "she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation." *Davis*, 804 F.3d at 235. On a motion to dismiss, "[t]he qualification element of a disability-discrimination claim requires only a 'minimal showing' that the plaintiff 'possesses the basic skills necessary for performance of [the] job.'" *Limauro*, 2021 WL 466952, at *6 (quoting *Owens v. N.Y.C. Hous. Auth.*, 934 F.2d 405, 409 (2d Cir. 1991)). Indeed, there is no requirement at this stage that a plaintiff describe the position's "essential job functions." *Id.* That determination "is a question reserved for later proceedings." *Id.*; *see also McBride v. BIC Consumer Prod. Mfg. Co.*, 583 F.3d 92, 98 (2d Cir. 2009). All a plaintiff must do to succeed is to "allege facts that raise an inference that [she] was qualified" for the position. *Limauro*, 2021 WL 466952, at *6.

---

Feb. 14, 2005) (citing a now-inoperative interpretive guideline stating that "temporary, non-chronic impairments of short duration," such as concussions, "are usually not disabilities"). Since the 2008 amendments, courts have found that non-chronic head and neck injuries can constitute a "disability" within the meaning of the ADA. *See, e.g., Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 33, 37 (2d Cir. 2018); *Chesebro v. Town of Guilderland*, No. 18-CV-1294, 2019 WL 3891024, at *6 (N.D.N.Y. Aug. 19, 2019); *cf. Koonce*, 2023 WL 8355926, at *3 (holding that a plaintiff's "lingering symptoms from his concussion" did not constitute a substantial limitation where his symptoms "only . . . delayed him from [driving to work] for five to ten minutes").

Samuels has done so. According to the complaint, she has a Bachelor of Arts in Neuroscience and Behavior from Columbia University and a Master of Arts in Middle Childhood Education from Brooklyn College. *See* Second Am. Compl. ¶ 17. Before working at Urban Assembly, she previously worked as a teacher for six years and she has "approximately 11 years of experience in education." *Id.* ¶ 18. After being hired by Defendants, Samuels "succeeded in her role and received positive feedback based on her performance." *Id.* ¶ 22. She also received a raise in 2022 and allegedly "never received any criticism or negative feedback regarding her work performance." *Id.* ¶¶ 23–24; *see also Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325 (S.D.N.Y. 2020) (finding a plaintiff qualified where she "allege[d] that [she] received a raise during her short tenure"); *cf. Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6 (2d Cir. 2006). At this stage, therefore, the Court finds that Samuels plausibly raises the inference that she was qualified for the position.

### 3.    Adverse Action Taken Because of Plaintiff's Disability

Finally, to plausibly allege that the adverse action was taken "because of" the plaintiff's disability, the ADA requires the plaintiff to "give plausible support to a minimal inference of discriminatory motivation." *Dooley*, 636 F. App'x at 21; *see also Davis*, 804 F.3d at 235 (holding that, with respect to whether "the adverse action was imposed because of [the plaintiff's] disability," the "plaintiff must show that the adverse employment action took place under circumstances giving rise to an inference of discrimination"). A "strong showing of temporal proximity between evidence of a plaintiff's disability and an adverse action can raise an inference of discrimination." *Devany v. United Parcel Serv., Inc.*, No. 18-CV-6684, 2021 WL 4481911, at *13 (S.D.N.Y. Sept. 30, 2021). In particular, "the temporal proximity of an employee's disclosure of a disability to [her] termination support an inference of discrimination" in ADA employment

discrimination cases. *Zelasko v. NYC Dep't of Educ.*, No. 20-CV-5316, 2021 WL 2635121, at *2 (E.D.N.Y. June 25, 2021). "[G]aps of two months or less . . . between disclosure of a disability and an adverse action" are generally sufficient to raise a minimal inference at the pleading stage. *Kamiel v. Hai St. Kitchen & Co. LLC*, No. 19-CV-5336, 2023 WL 2473333, at *4 (S.D.N.Y. Mar. 13, 2023) (collecting cases).

Because Defendants terminated Samuels' employment just seven days after she was injured—and just six days after she requested medical leave to recuperate—she plausibly raises an inference of discrimination. Indeed, courts in this District have denied motions to dismiss under similar circumstances. In *Crosby v. Stew Leonard's Yonkers LLC*, for example, a district court found that a plaintiff raised "sufficient facts to support a minimal inference of discriminatory motivation" where he "was terminated approximately two weeks after [his] . . . hospitalization" and the defendants "expected [him] to work while on medical leave." 695 F. Supp. 3d 551, 568 (S.D.N.Y. 2023); *see also Kamiel*, 2023 WL 2473333, at *5 ("The period between [the plaintiff's] disclosure of her disability and termination . . . is well-pled to have been five weeks—easily short enough under the case law to give rise to an inference of causation."). To be sure, Defendants point to numerous other reasons why their decision to terminate Samuels' employment may not have been made with discriminatory animus—her doctor's note failed to provide a diagnosis or any details, she failed to respond to Defendants' emails requesting additional medical documentation, and Noah was "sincerely afraid that [she was] sharing a student's personal information without parental consent or cause." Def. Br. at 3, 6–7. However, at this early stage, the close proximity between her injury, her request for accommodation, and her firing is "sufficient to raise a[] [minimal] inference that [she] was fired because of [her] disability." *Limauro*, 2021 WL 466952, at *7.

Accordingly, Samuels states an employment discrimination claim under the ADA against Urban Assembly, and Defendants' motion to dismiss this claim is denied.

### B.    NYSHRL Employment Discrimination Claims Against Both Defendants

Similar to the ADA, the NYSHRL prohibits discrimination on the basis of disability. *See* N.Y. Exec. Law § 296(1)(b). The NYSHRL is "interpreted coextensively" with the ADA. *Schwartz v. Middletown City Sch. Dist.*, No. 23-CV-1248, 2024 WL 1257095, at *4 (S.D.N.Y. Mar. 25, 2024). Thus, "NYSHRL claims are analyzed as ADA claims," *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 76 (2d Cir. 2019), and are governed by the same legal standards, *Kopchik v. Town of E. Fishkill, New York*, 759 F. App'x 31, 37 (2d Cir. 2018); *Kinneary v. City of New York*, 601 F.3d 151, 158 (2d Cir. 2010) (noting that "the same elements that must be proven to establish an ADA claim must be also demonstrated to prove claims under [the] NYSHRL").

One difference between the ADA and the NYSHRL is that the state law's definition of disability "is not limited to impairments that substantially limit one or more major life activities." *Murphy v. New York State Pub. Emps. Fed'n*, No. 17-CV-628, 2022 WL 4324435, at *18 (N.D.N.Y. Sept. 19, 2022). The NYSHRL instead only requires a "physical . . . impairment . . . which prevents the exercise of a normal bodily function." N.Y. Exec. Law § 292(21); *see McCowan v. HSBC Bank USA, N.A.*, 689 F. Supp. 2d 390, 402 (E.D.N.Y. 2010) ("[U]nder state law, a disability need only be a demonstrable impairment; it does not have to substantially limit a major life activity."). Here, Samuels plausibly alleges a disability within the meaning of the NYSHRL, given her allegedly "severe, persistent head and neck pain [that] impacted her ability to bend her neck and rotate her head." Second Am. Compl. ¶ 30. Therefore, for the same reasons as discussed above, Samuels states a claim for employment discrimination in violation of the NYSHRL. Defendants' motion to dismiss this claim is thus denied.

### C.    NYCHRL Employment Discrimination Claims Against Both Defendants

The NYCHRL also protects against disability-based discrimination. N.Y.C. Admin. Code §§ 8-102, 8-107. Defining disability as "any impairment of any system of the body," *id.* § 8-102, the NYCHRL provides even "greater protection against disability-based discrimination" than its federal and state counterparts, *McKenna v. Santander Inv. Sec., Inc.*, No. 21-CV-941, 2022 WL 2986588, at *7 (S.D.N.Y. July 28, 2022). The NYCHRL is a "one-way ratchet, by which interpretations of state and federal civil rights statutes can serve only as a floor below which the [NYCHRL] cannot fall." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). "Practically speaking, because the NYCHRL is more protective . . . , a claim is automatically stated under the NYCHRL if it is stated under the federal and state statutes." *Limauro*, 2021 WL 466952, at *4. Here, because Samuels states an employment discrimination claim under the ADA and the NYSHRL, she also states a claim under the NYCHRL. Defendants' motion to dismiss this claim is thus denied.

### II.    Failure to Accommodate Claims

Samuels next alleges that Defendants failed to accommodate her disability by terminating her employment rather than approve her requested medical leave, in violation of the ADA, the NYSHRL, and the NYCHRL. *See* Second Am. Compl. ¶¶ 66, 87, 109. Defendants argue that Samuels fails to state a claim under any statute because she never requested an accommodation and refused to participate in an "interactive dialogue" with Defendants. *See* Def. Br. at 6–8. Samuels has, at this stage, plausibly alleged a failure to accommodate claim under all three statutes.

### A.    ADA Failure to Accommodate Claim Against Defendant Urban Assembly

The ADA prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . .

employee." 42 U.S.C. § 12112(b)(5)(A). "To plead a failure-to-accommodate claim, a plaintiff must allege that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Dooley*, 636 F. App'x at 18.

The term "reasonable accommodation" is defined as "[m]odifications or adjustments that enable a[n] . . . employee with a disability to enjoy equal benefits and privileges of employment as are enjoyed by its other similarly situated employees without disabilities," which can include "[j]ob restructuring[,] part-time[,] or modified work schedules." 29 C.F.R. § 1630.2(o)(1)–(2). Courts "have concluded that a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work." *Graves*, 457 F.3d at 186 n.6 (collecting cases).

At the motion to dismiss stage, "[a]ll that plaintiffs must do . . . is plead the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits." *Shaywitz v. Am. Bd. of Psychiatry & Neurology*, 675 F. Supp. 2d 376, 390 (S.D.N.Y. 2009). "In other words, a plaintiff bears only the burden of identifying an accommodation which is reasonable." *Limauro*, 2021 WL 466952, at *8. Here, Samuels states a failure to accommodate claim against Urban Assembly under the ADA.

First, as discussed above with respect to her employment discrimination claim, Samuels adequately pleads a disability within the meaning of the ADA. *See* 42 U.S.C. § 12102(1)(A).

Second, Samuels plausibly alleges that Defendants had notice of her disability. Because "[t]he notice requirement is rooted in common sense," a duty to accommodate attaches "if the disability is obvious—which is to say, if the employer knew or reasonably should have known that

the employee was disabled." *Brady v. Wal-Mart Stores, Inc.*, 531 F.3d 127, 135 (2d Cir. 2008). In this case, Samuels alleges facts from which it can plausibly be inferred that Defendants had notice of her "physical . . . limitations." 42 U.S.C. § 12112(b)(5)(A).[6] Moreover, "an employee's request for an accommodation triggers a duty on the part of the employer to investigate that request and determine its feasibility." *Graves*, 457 F.3d at 185. Because Samuels requested an accommodation due to her disability, *see* Casparie Decl., Ex. B, she has met her burden on a motion to dismiss.

Third, with reasonable accommodation, Samuels has plausibly alleged that she could perform the essential functions of her job. As discussed above, "at the motion-to-dismiss stage," Samuels' allegations need only "raise[] an inference that [her] requests were reasonable in light of [her] disabilities." *Limauro*, 2021 WL 466952, at *8. She has done so. Samuels alleges that she could have successfully performed her job duties "[h]ad Urban Assembly provided [her] with [the] reasonable accommodation" of approving a temporary medical leave. Second Am. Compl. ¶ 65. The doctor's note similarly states that Samuels "may return to work on 6/21/2022," Casparie Decl., Ex. B, supporting a plausible inference that Samuels was qualified to perform her job after taking a temporary medical leave. Courts have found that medical leave can constitute a reasonable accommodation under the ADA. *See Graves*, 457 F.3d at 186 n.6; *see also Seigel v. Structure Tone Org.*, No. 19-CV-7307, 2022 WL 14746408, at *11 n.8 (S.D.N.Y. Oct. 24, 2022) ("Defendants may persuasively argue plaintiff's requested leave was too long or his likelihood of rehabilitating too uncertain to be reasonable, but those questions of fact must be decided by a jury."); *Simmons*

---

[6] According to the complaint, Samuels was injured by a student at Urban Assembly and while on its premises. Second Am. Compl. ¶ 25. She immediately reported her injuries to Urban Assembly and was then transported to the emergency room by ambulance. *Id.* ¶¶ 33, 42. The next day, Noah emailed Samuels, indicating that he "assume[d]" that she was "not coming in so [she] can recuperate." *Id.* ¶ 44. Samuels responded by email, explaining that she was discharged from the hospital to recuperate for ten days. Casparie Decl., Ex. B. Although it did not include a diagnosis, the doctor's note confirmed that Samuels was "seen and treated" in the emergency room and advised that she be given ten days to recuperate before returning to work. *Id.* Finally, Noah stated that he understood her email to be a "request for an accommodation that involves not working at all for 10 days." *Id.*, Ex. C.

*v. Success Acad. Charter Sch., Inc.*, No. 21-CV-10367, 2023 WL 3304107, at *8 (S.D.N.Y. May 8, 2023) (denying defendant's "motion for summary judgment as to [plaintiff's] claim that [defendant] failed to provide her with the reasonable accommodation of short-term leave"). Given that Samuels' requested leave was "finite" and was "reasonably likely to enable [her] to return to work," *Graves*, 457 F.3d at 186 n.6, she plausibly alleges a reasonable accommodation with which she would have been able to perform the essential functions of her job.

Fourth, Samuels plausibly alleges that Defendants refused to make a reasonable accommodation. The question of "[w]hether the employer definitively failed to accommodate a reasonable request . . . [is a] fact-intensive question[]" that is "reserved for later proceedings." *Limauro*, 2021 WL 466952, at *7–8. At the motion to dismiss stage, Samuels need only identify a reasonable accommodation and plausibly allege that Defendants denied it. *See id.* at *8–9. She has done so, asserting that she requested medical leave on June 10, 2022 and that Defendants terminated her position on June 16, 2022—just four days after Noah asked Samuels to submit additional medical documentation. *See* Second Am. Compl. ¶¶ 45–49. The Court rejects Defendants' argument that Samuels "did not 'request' any accommodation," "simply declar[ing] that she would be absent pursuant to a physician letter." Def. Br. at 7. The doctor's letter explicitly recommended that Samuels be granted a leave of absence, Casparie Decl., Ex. B, which Noah understood to be a "request for an accommodation," *id.*, Ex. C. Defendants also argue that "Plaintiff was not denied a reasonable accommodation because [she] refused to participate in" an "interactive dialogue" under the ADA. Def. Br. at 7. Although they rightly note that, "where a breakdown in [the] interactive process was manifestly the employee's fault, a failure-to-

accommodate claim might be deemed frivolous,"[7] *Tafolla v. Heilig*, 80 F.4th 111, 122 (2d Cir. 2023), *Bost v. Nassau Cnty. Dep't of Soc. Servs.*, No. 22-2547, 2023 WL 6366053, at *2 (2d Cir. Sept. 29, 2023), this fact-intensive inquiry is premature, *Limauro*, 2021 WL 466952, at *7–8. At this stage, Samuels has met her burden to plausibly allege that Defendants refused to reasonably accommodate her disability.

Accordingly, Samuels states a failure to accommodate claim under the ADA against Urban Assembly. Defendants' motion to dismiss this claim is thus denied.

### B.    NYSHRL Failure to Accommodate Claim Against Both Defendants

Like the ADA, the NYSHRL prohibits employers from "refus[ing] to provide reasonable accommodations to the known disabilities . . . of an employee." N.Y. Exec. Law § 296(3)(a). "Claims under the NYSHRL for a failure to accommodate are governed by the same legal standards as federal ADA claims." *McKenna*, 2022 WL 2986588, at *7; *see Fox*, 918 F.3d at 76. Defendants' motion to dismiss this claim is thus denied for the same reasons as discussed above.

### C.    NYCHRL Failure to Accommodate Claim Against Both Defendants

The NYCHRL similarly requires that employers "provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job." N.Y.C. Admin. Code § 8-107. As also discussed above, the NYCHRL is "more protective than its state and federal counterparts." *Limauro*, 2021 WL 466952, at *4; *see Mihalik*, 715 F.3d at 109. The Court therefore finds that Samuels states a failure to accommodate claim under the NYCHRL. Defendants' motion to dismiss this claim is thus also denied.

---

[7] As the Second Circuit has explained, "the ADA envisions an interactive process by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Tafolla v. Heilig*, 80 F.4th 111, 122 (2d Cir. 2023). "[A]n employer's failure to engage in a good faith interactive process can be introduced as evidence tending to show . . . that the employer has refused to make a reasonable accommodation." *Sheng v. M&TBank Corp.*, 848 F.3d 78, 87 (2d Cir. 2017).

### III.    Retaliation Claims Under the ADA, NYSHRL, and NYCHRL

Samuels next asserts that Defendants unlawfully retaliated against her by terminating her employment in response to her request for reasonable accommodation, in violation of the ADA, NYSHRL, and NYCHRL. Second Am. Compl. ¶¶ 72, 92, 116. Defendants argue that Samuels fails to state a claim because she does not plausibly allege that she engaged in protected activity under any statute. Def. Br. at 8–9. Samuels plausibly alleges a retaliation claim under the ADA and the NYCHRL, but fails to do so under the NYSHRL.

### A.    ADA Retaliation Claim Against Defendant Urban Assembly

The ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA] or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [the ADA]." 42 U.S.C. § 12203(a). To state a retaliation claim under the ADA, a plaintiff must plausibly allege that "(1) [she] was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Bost*, 2023 WL 6366053, at *2. "Requesting a reasonable accommodation for a disability constitutes a protected activity under the ADA." *Dolac v. Cnty. of Erie*, No. 20-2044-CV, 2021 WL 5267722, at *2 (2d Cir. Nov. 12, 2021).

Samuels states a claim for retaliation under the ADA. First, she plausibly alleges that she was engaged in protected activity because, as discussed above, she requested temporary medical leave as a reasonable accommodation. *See Graves*, 457 F.3d at 186 n.6. Second, Defendants were aware that she requested medical leave. Casparie Decl., Exs. B, C, D. Third, Defendants terminated Samuels' employment, which constitutes an adverse employment action under the ADA. *See*

*Gorman v. Covidien, LLC*, 146 F. Supp. 3d 509, 528 (S.D.N.Y. 2015). Fourth, she plausibly alleges a "causal connection" between her request for medical leave and her termination. Although Defendants may ultimately succeed by "articulat[ing] some legitimate, nondiscriminatory reason" for her termination, *McDonnell Douglas*, 411 U.S. at 802—such as her refusal to provide additional medical documentation, engage in an interactive process of accommodating her claimed disability, and Noah's fear that she was sharing a student's personal information without parental consent or cause—Samuels has met her burden on a motion to dismiss. Because Defendants terminated her employment just six days after her request for reasonable accommodation, "the extremely close temporal proximity between the protected activity and adverse employment action satisfies causation" at this early stage. *Flieger v. E. Suffolk Boces*, No. 13-CV-6282, 2016 WL 3527519, at *17 (E.D.N.Y. June 23, 2016), *aff'd*, 693 F. App'x 14 (2d Cir. 2017); *see Limauro*, 2021 WL 466952, at *10 ("Since [defendant] fired [plaintiff] three days after he requested an accommodation for his physical disabilities, this is enough to raise an inference that [it did so] because he engaged in the protected activity."). Accordingly, Defendants' motion to dismiss this claim is denied.

### B.    NYSHRL Retaliation Claim Against Both Defendants

The NYSHRL also makes it unlawful "to retaliate or discriminate against any person because he or she has opposed any practices forbidden under [the NYSHRL] or because he or she has filed a complaint, testified or assisted in any proceeding under [the NYSHRL]." N.Y. Exec. Law § 296(7). Courts evaluate ADA retaliation and NYSHRL retaliation claims under the same legal framework, but the NYSHRL statute "differ[s] from the ADA as to what qualifies as a 'protected activity.'" *Limauro*, 2021 WL 466952, at *9. Unlike the ADA, under the NYSHRL, "a request for reasonable accommodation is not a protected activity for purposes of a retaliation

claim." *Id.* at *10 (quoting *Witchard v. Montefiore Med. Ctr.*, 960 N.Y.S. 2d 402, 403–04 (App. Div. 1st Dep't 2013)); *see also, e.g.*, *Marshall v. Westchester Med. Ctr. Health Network*, No. 22-CV-7990, 2024 WL 665200, at *14 (S.D.N.Y. Feb. 16, 2024); *Weekes v. JetBlue Airways Corp.*, No. 21-CV-1965, 2022 WL 4291371, at *13 n.13 (E.D.N.Y. Sept. 16, 2022); *D'Amico v. City of New York*, 73 N.Y.S.3d 540, 558–59 (App. Div. 1st Dep't 2018) (holding that "[t]he motion court properly held that plaintiff failed to allege that he engaged in any protected activity as a predicate for his retaliation claims," given that his "request for a reasonable accommodation" did not "constitute[] protected activit[y] for purposes of the State . . . HRL[]"). "[C]ourts have distinguished between requests for accommodation in the first instance, which do not constitute protected activity, and complaints about or opposition to the denial of such requests, which may constitute protected activity." *Piligian v. Ichan Sch. of Med. at Mount Sinai*, No. 17-CV-1975, 2020 WL 6561663, at *11 (S.D.N.Y. Apr. 7, 2020) (collecting cases). However, "a plaintiff who alleges that [she] was fired because [she] had merely requested an accommodation – without complaining about an otherwise unlawful activity that was already taking place – does not state a claim under the NYSHRL." *Limauro*, 2021 WL 466952, at *10.

Here, Samuels asserts that her accommodation request should be "considered protected activity" under the NYSHRL and that her "allegations that she requested . . . medical leave for her injuries suffice . . . at the motion to dismiss stage." Pl. Br. at 11. The Court disagrees. Although the complaint also asserts, in a conclusory manner, that Samuels "opposed unlawful conduct . . . under the NYSHRL," Second Am. Compl. ¶ 93, she fails to state "practices forbidden under" the NYSHRL which she "opposed," N.Y. Exec. Law § 296(7). Given that she does not plausibly allege that she engaged in any protected activity under the statute, Samuels fails to state a NYSHRL retaliation claim. Defendants' motion to dismiss this claim is thus granted.

### C.    NYCHRL Retaliation Claim Against Both Defendants

To prevail on a retaliation claim under the NYCHRL, the plaintiff "must plausibly allege (1) that [s]he engaged in a protected activity of which [her] employer was aware; (2) that [s]he suffered an adverse action that would be reasonably likely to deter a person from engaging in a protected activity; and (3) that there was a causal connection between the protected activity and the action." *See Patterson*, 2023 WL 5671531, at *8. Unlike the NYSHRL, the NYCHRL forbids employers from "retaliat[ing]" against individuals who "request[] a reasonable accommodation" pursuant to the statute. N.Y.C. Admin. Code § 8-107; *see also Limauro*, 2021 WL 466952, at *10 ("New York City . . . amended its Human Rights Law, effective November 11, 2019, to make clear that requesting a reasonable accommodation is a protected activity under the NYCHRL."). Accordingly, for the same reasons as discussed above with regard to her ADA claim, the Court finds that Samuels has stated a NYCHRL retaliation claim, and Defendants' motion to dismiss this claim is denied.

### IV.    NYSHRL and NYCHRL Aiding and Abetting Claims Against Defendant Noah

Samuels next brings aiding and abetting claims against Noah under the NYSHRL and NYCHRL, alleging that he "knowingly and substantially assisted [Urban Assembly] in its violations of the NYSHRL and NYCHRL." Second Am. Compl. ¶ 124. Defendants argue that Noah cannot be held liable for aiding and abetting "[b]ecause there was no primary violation of [either] statute[]." Def. Br. at 9. Samuels plausibly alleges aiding and abetting claims under the NYSHRL and the NYCHRL, but fails to do so with regard to her NYSHRL retaliation aiding and abetting claim.

In addition to direct liability, the NYSHRL and NYCHRL each provide for aider-and-abettor liability, N.Y. Exec. Law § 296(6); N.Y.C Admin. Code § 8-107(6), allowing "an

individual employee [to] be held liable for aiding and abetting [the] discriminatory conduct" of a corporate employer, *Farmer*, 473 F. Supp. 3d at 337; *see Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 367 (S.D.N.Y. 2012).[8] "The same standard governs aiding and abetting claims under the NYSHRL and NYCHRL 'because the language of the two laws is virtually identical.'" *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004)). First, "a precondition to a valid aiding and abetting claim under the NYSHRL or NYCHRL is a demonstration of a valid primary claim for discrimination or retaliation" against the corporate employer. *Sanchez v. L'Oreal USA, Inc.*, No. 21-CV-3229, 2022 WL 1556402, at *5 (S.D.N.Y. May 17, 2022). Second, "a plaintiff must allege that the [individual] defendant actually participated in the unlawful conduct such that the aider and abettor share[s] the intent or purpose of the principal actor." *Everett v. New York City Dep't of Educ.*, No. 21-CV-7043, 2023 WL 5629295, at *12 (S.D.N.Y. Aug. 31, 2023).

Samuels states an aiding and abetting claim against Noah under both statutes. First, as discussed above, she plausibly alleges discrimination and failure to accommodate claims under the NYSHRL, and discrimination, failure to accommodate, and retaliation claims under the NYCHRL. Second, she pleads sufficient facts to suggest that Noah "actually participated" in Urban Assembly's unlawful conduct. *Id.* Samuels asserts, for example, that Noah was Urban Assembly's founding principal, that he had "the ability to affect the terms and conditions" of her employment, and that he "did so by . . . terminating her employment." Second Am. Compl. ¶¶ 13–14; *see* Casparie Decl., Exs. B, C, D.[9] Defendants' motion to dismiss these claims is thus denied, with one

---

[8] Although "there can be no aider-and-abettor liability as to . . . [c]orporate [d]efendants for aiding and abetting their own conduct," a plaintiff may properly bring both "direct and aiding and abetting liability" claims against individual defendants. *Malena*, 886 F. Supp. 2d at 368.

[9] Defendants argue that Samuels has abandoned this claim because her "opposition fails to address [the relevant] portion of Defendants' initial motion papers." Def. Reply Br. at 2. But Samuels did, in fact, respond to Defendants'

exception: because Samuels fails to state an underlying NYSHRL retaliation claim, she cannot state a NYSHRL retaliation aider and abettor claim as a matter of law. *See Sanchez*, 2022 WL 1556402, at \*5.

## V.    NYLL Section 740 Claim Against Both Defendants

Samuels also brings a NYLL whistleblower claim, alleging that Defendants unlawfully retaliated against her because she filed a police report and objected to Noah's instructions to "not give the police any information about the student who had assaulted her." Second Am. Compl. ¶¶ 33–34. Defendants argue that Samuels fails to state a claim because she does not identify any law, rule, or regulation that Defendants violated, and because the police report concerned the conduct of a student, not Urban Assembly. Samuels plausibly alleges a retaliation claim under NYLL § 740.

The NYLL forbids employers from "tak[ing] any retaliatory action against an employee . . . because such employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab. Law § 740(2)(a).[10] The statute also proscribes retaliation because an employee "objects to, or refuses to participate in any such activity, policy or practice." *Id.* § 740(2)(c). To state a claim under § 740, a plaintiff must plausibly allege: "(1) [an] activity protected by the statute; (2) [a] retaliatory action; and (3) some causal connection between the protected activity and the adverse action." *Callahan v. HSBC Sec. (USA) Inc.*, No. 22-

---

arguments as to this claim. *See* Pl. Br. at 6 ("Because Samuels has adequately plead her [claims] . . . under the NYSHRL and NYCHRL, Defendants' sole basis for requesting dismissal for her aiding and abetting claims under those statutes—that she failed to state an underlying violation—should also be rejected.").

[10] For the purposes of this statute, "law, rule or regulation" is defined as "(i) any duly enacted federal, state or local statute or ordinance or executive order; (ii) any rule or regulation promulgated pursuant to such statute or ordinance or executive order; or (iii) any judicial or administrative decision, ruling or order." N.Y. Lab. Law § 740(1)(c). A "public body" includes "any federal, state, or local law enforcement agency, prosecutorial office, or police or peace officer." *Id.* § 740(1)(d)(iv).

CV-8621, 2024 WL 1157075, at *6 (S.D.N.Y. Mar. 18, 2024). At this stage, a plaintiff "must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged . . . conduct," but she need not "identify the specific law, rule, or regulation" that she reasonably believed the defendant was violating. *Komorek v. Conflict Int'l, Inc.*, No. 22-CV-9467, 2024 WL 1484249, at *6 (S.D.N.Y. Mar. 29, 2024); *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.*, 15 N.E.3d 1172, 1174 (N.Y. 2014).

Samuels asserts that, after reporting her injury to Defendants, Noah "instructed [her] to not give the police any information about the student who had assaulted her." Second Am. Compl. ¶ 34. When she began reporting the alleged assault to the police, she says Noah "angrily asked if she really wanted to get a kid involved in the criminal justice system." *Id.* ¶ 35. Samuels maintains that she understood Noah's actions to be an "attempt[] to prevent her from reporting the incident to the police," *id.* ¶ 38, and that she "objected" to this attempt by continuing to "report[] the incident to the police officers present," *id.* ¶ 40. Samuels now argues that she has stated a NYLL retaliation claim because she "objected to . . . Defendants' attempts to prevent her from filing a police report . . . under the reasonable belief that Defendants' attempts to prevent her from filing a police report was in violation of [a] law, rule, or regulation." Pl. Br. at 13. In response to this protected activity, Defendants "disabled her school email and system access" and fired her seven days later. *See* Second Am. Compl. ¶¶ 43, 49.

Defendants argue that this claim should be dismissed because Samuels fails to "identify any law, rule or regulation that Defendants violated" and because "the police report was about the conduct of a student . . . not the activities, policies, or practices of [Urban Assembly]." Def. Reply Br. at 7. The Court disagrees. First, Samuels plausibly alleges that she participated in an activity

protected under the statute. To be sure, Samuels does not assert that she "disclose[d] . . . to a public body an activity, policy or practice of the employer." N.Y. Lab. Law § 740(2)(a). As Defendants rightly note, Samuels reported a student's conduct to the police, and she does not aver that she reported any unlawful conduct by Urban Assembly or Noah. *See* Second Am. Compl. ¶¶ 33–41. Nevertheless, § 740 independently proscribes retaliation against an employee because that employee "objects to, or refuses to participate in any . . . activity, policy or practice" that "the employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab. Law § 740(2); *see Goldberg v. Bespoke Real Est. LLC*, No. 23-CV-5614, 2024 WL 1256006, at *10 (S.D.N.Y. Mar. 25, 2024). Samuels identifies a specific activity, namely that Defendants "attempted to prevent" her from filing a police report about an Urban Assembly student and forbade her from "giv[ing] the police any information" about that student. *See* Second Am. Compl. ¶¶ 34, 38; *see also id.* ¶ 39 (alleging that Samuels' supervisor "told her that she could not disclose the identity of the student that assaulted her to police"). Samuels, moreover, plausibly alleges that she "object[ed] to, or refuse[d] to participate in" Defendants' activity, N.Y. Lab. Law § 740(2)(c), because she reported the assault to the police even after Noah "instructed [her]" not to do so. Second Am. Compl. ¶ 34; *see* Casparie Decl., Ex. B (explaining that Noah was "afraid" that Samuels "shar[ed] a student's personal information [to the police] without parental consent or cause"). The complaint thus contains sufficiently specific allegations to provide Defendants "with notice of the alleged . . . conduct" to which Samuels objected. *Komorek*, 2024 WL 1484249, at *6.[11]

---

[11] As discussed above, because "[t]he plain language of Labor Law § 740(2)(a) does not impose any requirement that a plaintiff identify the specific law, rule or regulation violated as part of a section 740 claim," *Webb-Weber*, 15 N.E.3d at 1174, Samuels has met her burden at this early stage. "To be sure, in order to recover under a Labor Law § 740 theory, the plaintiff has the burden of proving that an actual violation occurred, as opposed to merely establishing that the plaintiff possessed a reasonable belief that a violation occurred. . . . However, for pleading purposes, the complaint need not specify the actual law, rule or regulation violated." *Id.*

Second, Samuels plausibly alleges that Defendants took a "retaliatory action" against her. Pursuant to the NYLL, "retaliatory action[s]" include "adverse employment actions . . . against an employee in the terms of conditions of employment," such as "discharge." N.Y. Lab. Law § 740(1)(e). Defendants' decision to terminate her employment thus constitutes a retaliatory action under the statute.

Third, she plausibly alleges "some causal connection between the protected activity and the adverse action." *Callahan*, 2024 WL 1157075, at *6. Not only was Samuels fired a week after she objected to Noah's instructions, but Noah's emails also support a plausible causal connection between Samuels' police report and her subsequent termination. In his June 11th email, for instance, Noah explained that he disabled her email account because he "was sincerely afraid that [she was] sharing a student's personal information without parental consent or cause, and given what [she] did, more generally concerned about [her] mental state." Casparie Decl., Ex. B. (noting that he believed Samuels "ma[d]e . . . a bad faith assault claim"). When Noah terminated Samuels' employment, he also explained that he did so "out of concern for the safety of [the school's] students and families." *Id.*, Ex. D. Taken together, these allegations plausibly suggest that Samuels was fired because she objected to Noah's instructions not to file a police report.

Samuels thus states a retaliation claim under the NYLL, and Defendants' motion to dismiss this claim is denied.

## VI.    First Amendment Retaliation Claim Against Both Defendants

Samuels next asserts a First Amendment retaliation claim, alleging that Defendants fired her because she filed a police report, which was "activity protected by the First Amendment." Second Am. Compl. ¶¶ 137–38. Defendants contend that Samuels fails to state a claim, arguing that, although "42 U.S.C. § 1983 allows individuals to sue government officials acting under color

of state law for retaliating against the exercise of [F]irst [A]mendment rights, there is no analogous provision authorizing suits against private entities, to [which] the First Amendment does not apply." Def. Br. at 12. The Court agrees with Defendants that Samuels fails to plausibly allege a First Amendment retaliation claim.

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States." *Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999). In other words, "a plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of . . . her constitutional rights." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002) (per curiam).

Actions under § 1983 are permitted only against state actors or those acting under "color of state law." *Rendell-Baker v. Kohn*, 457 U.S. 830, 835 (1982); *Tancredi v. Metro. Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003) ("A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action."). The statute provides no remedy for "merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999). In some circumstances, however, "[c]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012). "To establish that a private actor's conduct is to be deemed state

action, a § 1983 plaintiff must demonstrate that the State was involved in the specific activity giving rise to his or her cause of action; it is not enough to show merely that the State was involved in 'some activity' of the private entity 'alleged to have inflicted injury upon [the] plaintiff.'" *Dawkins v. Biondi Educ. Ctr.*, 164 F. Supp. 3d 518, 525 (S.D.N.Y. 2016) (quoting *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257–58 (2d Cir. 2008)). Critically, "a private entity does not become a state actor for purposes of § 1983 merely on the basis of the private entity's creation, funding, licensing, or regulation by the government." *Fabrikant*, 691 F.3d at 207. "The fundamental question . . . is whether the private entity's challenged actions are 'fairly attributable' to the state." *Id.* (quoting *Rendell-Baker*, 457 U.S. at 838).

Samuels fails to plausibly allege that Defendants are state actors or otherwise acted under color of state law when they terminated her employment. According to the complaint, "Urban Assembly is a not-for-profit corporation registered in New York and permitted to do business in New York." Second Am. Compl. ¶ 10. Samuels "offers no specific allegation that Defendants are regulated by the State in the school's personnel matters, including employment termination." *Dawkins*, 164 F. Supp. 3d at 526. She further fails to specify why Defendants' termination decision was "fairly attributable" to the state, *Rendell-Baker*, 457 U.S. at 838, or if it was "compelled or even influenced by any state regulation," *Dawkins*, 164 F. Supp. 3d at 527. Samuels instead argues that some courts have "held that charter school employees are considered public employees for purposes of First Amendment retaliation claims." Pl. Br. at 15 (citing *Coleman v. Utah State Charter Sch. Bd.*, No. 2:10-CV-1186, 2011 WL 4527421, at *5 (D. Utah Sept. 28, 2011)).[12] But

---

[12] Although the Second Circuit has not resolved this question, "district courts have considered charter schools to be state actors for purposes of [§] 1983 claims, in at least some circumstances," including First Amendment termination suits. *Ibekweh v. Ascend Learning, Inc.*, No. 22-CV-1587, 2023 WL 6292526, at *2 (E.D.N.Y. Sept. 27, 2023); *see Matwijko v. Bd. of Trustees of Glob. Concepts Charter Sch.*, No. 04-CV-663A, 2006 WL 2466868, at *5 (W.D.N.Y. Aug. 24, 2006); *but see Rodriguez v. Int'l Leadership Charter Sch.*, No. 08-CV-1012, 2009 WL 860622, at *2

the complaint fails to raise facts specifying Urban Assembly's legal status under New York State law. Although the school's full name is "Urban Assembly Charter School for Computer Science," Samuels does not assert that the school was chartered pursuant to state law or otherwise specify how the school's termination decisions are regulated by the State. *See* N.Y. Educ. Law § 2853(1)(c). In similar cases, plaintiffs have specifically alleged, for instance, that a defendant is "a public charter school, operating as a 501(c)(3) not-for-profit corporation"; that "the Board of Trustees of the State University of New York . . . authorized the [s]chool's charter"; and that the application for the school's charter fell under "New York Education Law § 2851." *See Thurber v. Finn Acad.*, No. 6:20-CV-6152, 2021 WL 927627, at *1 (W.D.N.Y. Mar. 11, 2021).[13] Samuels, by contrast, merely states that Urban Assembly is a "non-for-profit corporation." Second Am. Compl. ¶ 10. Without additional information, she fails to plausibly allege that Defendants acted under color of state law.

In any event, even if Urban Assembly was a state actor or acted under color of state law, Samuels fails to state a claim. "[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "Speech addresses a matter of public concern when it relates to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest." *Gordon v. City of New York*, 612 F. App'x 629, 631 (2d Cir. 2015). "Among the relevant considerations in deciding if speech addresses a matter of public concern is whether the speech was calculated to redress personal grievances or whether it had a broader public

---

(S.D.N.Y. Mar. 30, 2009) (noting in dicta that a New York charter school was "not . . . a state actor for First Amendment purposes").

[13] *See also Ibekweh*, 2023 WL 6292526, at *1 (noting that the complaint asserted that the defendant was granted charter by the State of New York); *Matwijko*, 2006 WL 2466868, at *1 (stating that the plaintiff's complaint explained the governance structure of the defendant's charter school under state law).

purpose." *Id.*; *see Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 85 (2d Cir. 2022) ("[S]peech does not involve a matter of public concern when it principally focuses on the speaker's personal issues or speech that is calculated to redress personal grievances, even if it also incidentally touches on a matter of general importance."). *Gordon v. City of New York*, a case involving an employee who filed a police report after being assaulted by a coworker, is instructive here. 612 F. App'x 629 (2d Cir. 2015). In *Gordon*, the Second Circuit held that "the complaint contain[ed] no plausible allegation that [the plaintiff's] statement to the police was anything more than a simple, individualized assault report." *Id.* at 631 (noting that the complaint "fail[ed] to plead facts suggesting that the police report itself was an attempt to expose" the defendant's alleged "policy and custom of covering up workplace violence"). Here, too, Samuels alleges that she "reported the assault to the police," Second Am. Compl. ¶¶ 35, 40, but she does not assert any "broader public purpose" for her speech, *Gordon*, 612 F. App'x at 631; *see Gusler v. City of Long Beach*, No. 10-CV-2077, 2016 WL 11493644, at *21 (E.D.N.Y. Aug. 4, 2016) ("There is simply nothing about this complaint that purports to speak out on an issue of public importance."). Accordingly, she fails to state a First Amendment retaliation claim under 42 U.S.C. § 1983, and Defendants' motion to dismiss this claim is granted.

## VII. NYLL Unlawful Wage Deduction Claim Against Defendant Urban Assembly

Finally, Samuels brings a wage deduction claim under the NYLL, alleging that Urban Assembly deducted "approximately $1,700 from her final paycheck, which represented the approximate value of a laptop it issued to Samuels, despite her having returned the laptop to Urban Assembly." Second Am. Compl. ¶ 52. Defendants argue that she fails to state a claim because her "bald assertion that she received a pay deduction . . . is [vague and] conclusory." Def. Br. at 10. Samuels plausibly alleges an unlawful wage deduction claim.

Section 193 of the NYLL "broadly prohibits employers from taking money from their employees for the employer's own benefit." *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 951 (S.D.N.Y. 2013). The statute provides that "[n]o employer shall make any deduction from the wages of an employee" unless such deductions are "expressly authorized in writing by the employee and are for the benefit of the employee." N.Y. Lab. Law § 193(1)(b). Although the statute previously required a plaintiff to "allege a specific deduction from wages and not merely a failure to pay wages," *Goldberg v. Jacquet*, 667 F. App'x 313, 314 (2d Cir. 2016), the law was amended in 2021 to clarify that "[t]here is no exception to liability . . . for the unauthorized failure to pay wages, benefits or wage supplements," N.Y. Lab. Law § 193(5); *see Fersel v. Paramount Med. Servs., P.C.*, No. 18-CV-2448, 2022 WL 14813738, at *1 (E.D.N.Y. Oct. 26, 2022) (noting that, "[i]n the Sponsoring Memorandum, the bill's sponsors observed that . . . [t]he purpose of this remedial amendment is to clarify that . . . the unauthorized failure to pay wages, benefits and wage supplements has always been encompassed by the prohibitions of section 193"); *Gunthorpes v. IM. Grp.*, No. 21-CV-5140, 2024 WL 2031191, at *5 (E.D.N.Y. Apr. 11, 2024).

In her complaint, Samuels specifies the approximate value of Defendants' wage deduction ($1,700) and pleads sufficient facts to suggest that Defendants withheld wages without written consent. Although Defendants contend that her complaint is "vague and conclusory" such that Defendants are not "on notice of the actual basis" for her claim, Def. Br. at 10 (quoting *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 472 (E.D.N.Y. 2011)), the complaint and documents provide Defendants with sufficient notice of her allegations. For example, Noah's June 16th termination email to Samuels asked her to "return" her school-issued "computer via mail or [to] drop [it] off at the safety desk" of the school. Casparie Decl., Ex. D. And Samuels avers that Defendants withheld the approximate cost of that laptop "despite her having returned [it] to Urban

Assembly." Second Am. Compl. ¶ 52. Accepting her allegations as true, *Sierra Club*, 911 F.3d at 88, the Court therefore finds that Samuels plausibly alleges a wage deduction claim under the NYLL. *See Neu v. Amelia U.S. LLC*, 208 N.Y.S.3d 183, 184 (App. Div. 1st Dep't 2024) (finding a NYLL § 193 claim well pled where plaintiff alleged "that defendants made partial payments to plaintiff after his departure which fell short of [his] fully earned amounts"). Defendants' motion to dismiss this claim is thus denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. The Court denies Defendants' motion to dismiss as to all claims except for Samuels' retaliation claims brought under the NYSHRL and the First Amendment, which the Court dismisses. The Clerk of Court is respectfully directed to terminate the motions pending at Dkt. Nos. 19 and 24.

SO ORDERED.

Dated:     August 30, 2024
           New York, New York

_____
           Hon. Ronnie Abrams
           United States District Judge