UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA SAMUELS,

                Plaintiff,

        v.

URBAN ASSEMBLY CHARTER SCHOOL FOR
COMPUTER SCIENCE d/b/a COMP SCI HIGH
and DAVID NOAH, individually,

                Defendants.

23-CV-1379 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

    Plaintiff Melissa Samuels brings this action against her former employer, Urban Assembly Charter School for Computer Science ("UACS" or the "School"), and her former supervisor, then-Principal David Noah. Her claims arise out of an incident in which a UACS student struck her in the head with a ball, after which she called the police to the school, reported the incident as an assault, requested 10 days' leave to recuperate, and was terminated shortly thereafter. She now asserts claims for discrimination and retaliation under the Americans with Disabilities Act ("ADA"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), and the New York Labor Law ("NYLL"). Before the Court is Defendants' motion for summary judgment on all claims.

    At the core of Samuels's case is her NYLL § 740 claim, in which she alleges that Defendants unlawfully retaliated against her for filing a police report against a student. The facts she relies upon in support of that claim establish that there is no genuine dispute that she was terminated largely due to her conduct in response to the incident, and not—as her ADA claims require—because of her alleged disability. Accordingly, and for the reasons that follow, summary judgment is granted with respect to the ADA claims, Samuels's only federal law claims. The Court

declines to exercise supplemental jurisdiction over the remaining state law claims, and those claims are thus dismissed without prejudice.

## BACKGROUND

The following facts are principally taken from Defendants' 56.1 statement and Plaintiff's counterstatement, as well as the parties' other submissions in connection with Defendants' motion for summary judgment. These facts are undisputed unless otherwise noted.

Samuels was employed as a math teacher at UACS from August 2021 to June 16, 2022. Pl.'s Resp. to Defs.' Rule 56.1 Statement ("56.1 Statement") ¶ 2, ECF No. 74. On June 9, 2022, during an advisory class that she co-taught with another teacher, Samuels was struck in the head by a ball that the students had been tossing around the room. *Id.* ¶¶ 5–9. The parties dispute whether the ball was made of rubber or foam, and whether the student who threw the ball hit Samuels intentionally or by accident. Defs.' Resp. to Pl.'s Rule 56.1 Counterstatement ("56.1 Counterstatement") ¶ 126, 128, 129, ECF No. 77-1. Samuels neither fell nor lost consciousness when the ball struck her, 56.1 Statement ¶ 20, but she claims that the ball's impact caused her significant pain, 56.1 Counterstatement ¶ 127. She then left the classroom, called 911, and told the 911 operator that a student hit her in the head with a ball. 56.1 Statement ¶¶ 22, 24–25. Police and emergency medical services arrived at the school sometime later. *Id.* ¶¶ 26, 34. While Samuels was talking to the police, Noah—who the parties agree was upset with Samuels—approached her and attempted to dissuade her from reporting the incident out of concern for the student's wellbeing. 56.1 Counterstatement ¶ 134–35. Samuels nonetheless proceeded to file a police report, leading the police to conduct an investigation, which it eventually closed without making an arrest. Soller Decl., Ex. C, ECF No. 70-6.

Samuels left the school in an ambulance and was taken to St. Barnabas Hospital. 56.1

Statement ¶ 34. A doctor at St. Barnabas provided Samuels with a note excusing her from work for four days, but there is no evidence that she provided that note to UACS. *Id.* ¶¶ 38–39. After Samuels left, Noah disabled her access to the school's electronic systems. 56.1 Counterstatement ¶ 142. The next morning, on June 10, 2022, Noah sent Samuels a text message that read: "Melissa, I hope your head is feeling better. I assume you're not coming in so you can recuperate. I remain confused about yesterday and I think it's important we speak today. Please let me [k]now when we can speak." Soller Decl., Ex. G, ECF No. 70-10. Later that day, Samuels went to Mt. Sinai Hospital and told the doctor that she had sustained a concussion and was experiencing blurred vision and neck pain. 56.1 Statement ¶¶ 40–41. She was discharged the same day with a doctor's note that stated: "Melissa Samuels was seen and treated in our emergency department on 6/10/2022. Please excuse the absence. She may return to work on 6/21/2022. If you have any questions or concerns[,] please don't hesitate to call." 56.1 Counterstatement ¶ 150. That night, she emailed Noah a copy of the doctor's note and wrote: "After being assaulted on campus I sought medical care, and was discharged this evening to recuperate. Please see the attached physician letter excusing me from work for ten days." *Id.* ¶ 149.

Noah responded on June 11, 2022, writing, in part: "You were not assaulted. [The student] accidentally hit you with a nerf ball[.] . . . Your account was temporarily disabled because I was sincerely afraid that you were sharing a student's personal information without parental consent or cause, and given what you did, more generally concerned about your mental state. . . . I'm not sure why you are doing this, but if it's just to avoid coming to work, let's please talk. I'm confident we can come to some agreement that doesn't involve ruining a child's life with a felony charge. . . . Please let me know when you are free to meet." *Id.* ¶ 151. On June 12, 2022, Noah emailed Samuels to inform her that the School would require further documentation of her medical

3

condition to excuse her absence beyond Friday, June 17, 2022, as she "didn't submit sufficient information to allow for an accommodation," and advised her to contact him by email, text, or phone if she wished to discuss further. *Id.* ¶ 152; Soller Decl., Ex. H, ECF No. 70–11.

After her June 10, 2022 email, Samuels did not contact Noah or any other UACS personnel to discuss the incident or to provide additional documentation, and never informed UACS of her concussion or the symptoms she was experiencing. 56.1 Statement ¶¶ 73–78, 80–82. On June 16, 2022, Noah sent an email to Samuels notifying her that UACS had terminated her employment. *Id.* ¶ 70. He wrote: "I haven't heard from you other than a brief email last Friday and you haven't responded to my several requests to speak. Comp Sci High is terminating your employment effective today. We are doing so out of concern for the safety of our students and families, and given your lack of communication and the several attendance issues you had in recent weeks (in which you left early without communication)." Soller Decl., Ex. I, ECF No. 70-12.

Plaintiff commenced this action on February 17, 2023, asserting claims for discrimination and retaliation under the ADA, NYSHRL, NYCHRL, NYLL, and First Amendment. ECF No. 1. On August 30, 2024, the Court granted Defendants' motion to dismiss with respect to Samuels' NYSHRL retaliation and First Amendment claims and denied the motion with respect to her other claims. *See* ECF No. 59. Following discovery, Defendants filed the instant summary judgment motion, *see* ECF No. 70 ("Mot."), which Plaintiff opposes, *see* ECF No. 73 ("Opp'n").

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 authorizes a court to grant summary judgment if the movant establishes that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008).[1]

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and omissions, and adopt alterations.

4

"A fact is material if it might affect the outcome of the suit under the governing law," and it is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the moving party has asserted facts establishing that it is entitled to judgment, the opposing party must "cit[e] to particular parts of materials in the record" or "show[] that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011).

Samuels's ADA claims are analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See McMillan v. City of New York*, 711 F.3d 120, 125–26 (2d Cir. 2013). Under that familiar framework, "a plaintiff bears the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination; it is then the defendant's burden to proffer a legitimate non-discriminatory reason for its actions; the final and ultimate burden is on the plaintiff to establish that the defendant's reason is in fact pretext for unlawful discrimination." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014).

## DISCUSSION

### I. ADA Discrimination and Failure to Accommodate Claims

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] discharge of employees . . . and other terms, conditions, and privileges of employment," 42 U.S.C. § 12112(a), and further prohibits employers from "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee," *id*. § 12112(b)(5)(A). Samuels asserts that UACS

5

violated these provisions by terminating her employment, thereby denying her request for ten days' leave to accommodate her purported disability.[2]

As discussed above, ADA disability discrimination and failure to accommodate claims are analyzed under the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case for either claim, Samuels must demonstrate, among other things, that she is disabled within the meaning of the ADA. *Vega v. Dep't of Educ.*, No. 19-CV-6963, 2020 WL 6727803, at *5 (S.D.N.Y. Nov. 16, 2020); *Hettiarachchi v. Cnty. of Suffolk*, No. 14-CV-6731, 2020 WL 5848617, at *16 (E.D.N.Y. Sept. 30, 2020). UACS contends that she has failed to satisfy that burden. The Court agrees.

The ADA defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of [an] individual." 42 U.S.C. § 12102(1)(A). A physical impairment includes "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more body systems, such as neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1). "[M]ajor life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). "An impairment substantially limits a major life activity if the impaired person is significantly restricted as to the condition, manner or duration under which she can perform the activity." *Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 68 (2d Cir. 2014).

---

[2] Given that the ADA "cannot provide for individual liability," Samuels properly brings her ADA claims only against UACS. *See Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010); *Garvey v. Town of Clarkstown, New York*, No. 13-CV-8305, 2018 WL 1026379, at *8 (S.D.N.Y. Feb. 22, 2018), *aff'd sub nom. Garvey v. Sullivan*, 773 F. App'x 634 (2d Cir. 2019).

"Generally, to survive summary judgment on the issue of whether a plaintiff's condition substantially limits a major life activity, a plaintiff must not only (1) describe how those life activities are limited, but must also (2) support this description with competent medical evidence." *Villanti v. Cold Spring Harbor Cent. Sch. Dist.*, 733 F. Supp. 2d 371, 380 (E.D.N.Y. 2010), *on reconsideration*, No. 08-CV-434, 2011 WL 13302730 (E.D.N.Y. Apr. 1, 2011); *see also O'Connor v. City of New York*, No. 15-CV-3709, 2019 WL 13548085, at *6 (E.D.N.Y. Jan. 24, 2019).

It is undisputed that Samuels was diagnosed with a "minor head injury," "neck pain," and a "concussion," Soller Decl., Ex. Q, ECF No. 70-20, which Defendants agree may qualify as an impairment. However, the record before the Court, which consists of records from Samuels's two emergency room visits, the June 10, 2022 doctor's note, and Samuels's own deposition testimony, fails to establish that her impairment substantially limited any major life activity. The Court addresses each source of evidence in turn.

First, although the emergency room records demonstrate that Samuels suffered an impairment, they contain no information regarding substantial limitations on her major life activities. The record of Samuels's first emergency room visit indicates she was diagnosed with a "headache," described her condition at discharge as "good," and advised her to take over-the-counter pain medications and to seek further treatment if her symptoms worsened or failed to resolve. *Id.*, Ex. P, ECF No. 70-19. The record of her second emergency room visit shows that she was diagnosed with a "minor head injury," "neck pain," and a "concussion," and that the results of a CT scan of her head and neck were negative. *Id.*, Ex. Q. It also includes what appear to be standard "concussion discharge instructions" advising her to "avoid mental activities requiring concentration" and to stay home from work "if symptoms are severe" and she "cannot concentrate for more than 30-45 minutes." *Id.* It does not, however, describe Samuels's condition in detail,

nor state whether she in fact reported difficulty concentrating for a prolonged period. Accordingly, these records are insufficient to establish that Samuels was disabled within the meaning of the ADA. *See Villanti*, 733 F. Supp. 2d at 380 (finding medical evidence insufficient to support claim of substantial limitation where it did not "describe the plaintiff's condition in detail" or "detail the basis for the accommodations requested"); *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 303 (S.D.N.Y. 2003) ("Plaintiff's failure to substantiate the extent of his limitations with medical evidence precludes him from establishing that he suffers from a disability within the meaning of the ADA."); *Dominguez v. Eagle River Homes, LLC*, No. 5:24-CV-00852, 2025 WL 1111511, at *10 (E.D. Pa. Apr. 15, 2025) (finding no substantial limitation from concussion where "[n]one of the medical records support[ed] [the plaintiff's] testimony that she could not see, concentrate, ambulate, or lift").

The June 10, 2022 doctor's note is likewise insufficient to establish a substantial limitation of a major life activity. As a threshold matter, "unsworn letters from a doctor are generally not admissible," and are thus not properly considered on summary judgment. *Jeffries v. Verizon*, No. 10-CV-2686, 2012 WL 4344197, at *12 (E.D.N.Y. Aug. 31, 2012), *report and recommendation adopted*, 2012 WL 4344188 (E.D.N.Y. Sept. 21, 2012). In any event, the note states only that Samuels "was seen and treated in [the hospital's] emergency department" and "may return to work" ten days later. Soller Decl., Ex. Q, ECF No. 70-8. This type of note, which is devoid of any information about Samuels's condition or need for accommodations, does not provide a basis to find a substantial limitation. *See Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 88 (2d Cir. 2010) (summary order) (affirming summary judgment where the record "contain[ed] no medical evidence other than a doctor's note clearing [the plaintiff] to return to work following her surgery"); *Villanti*, 733 F. Supp. 2d at 378–80. *See also Levine v. Smithtown Ctr. Sch. Dist.*,

565 F. Supp. 2d 407, 426 (E.D.N.Y. 2008) (finding doctor's notes insufficient to constitute a record of disability when "[t]he notes d[id] not state that the diagnosed impairments substantially or otherwise limit[ed] one or more of plaintiff's major life activities").

Finally, Samuels's own testimony fails to show that she was substantially limited in a major life activity. "District courts in the Second Circuit have repeatedly held that a plaintiff's personal testimony which describes the alleged limits that affect a major life activity, without supporting medical testimony, simply is not sufficient to establish h[er] prima facie case under the ADA." *Jeffries*, 2012 WL 4344197, at *11. As discussed, Samuels has failed to proffer sufficient medical evidence to support her claim.

Even if medical evidence were not required, Samuels's testimony would nonetheless be insufficient to establish a substantial limitation. In her deposition, Samuels testified that she experienced "blurred vision," Soller Decl., Ex. B ("Samuels Dep.") at 289, ECF No. 70-5, "head pain," *id.* at 291, and "extreme neck pain" that "prevent[ed] [her] from moving [her] neck as [she] would have wanted to," *id.* at 290. She claims these symptoms rendered her unable to drive to the hospital, *id.*, and "impacted [her] ability . . . to . . . perform day to day tasks" and her "sleeping," *id.* at 310. However, Samuels did not specify the "day to day" tasks she was unable to perform, nor the extent to which her sleep was affected, *see Levine*, 565 F. Supp. 2d at 423 (finding that the plaintiff's alleged sleep disability did not constitute a substantial limitation when she failed to show that her ability to sleep was substantially limited relative to the average person), and "courts in the Second Circuit have found that driving and commuting to work are not [] major life activities," *Dechberry v. New York City Fire Dep't*, 124 F. Supp. 3d 131, 152 (E.D.N.Y. 2015) (collecting cases). Moreover, her testimony fails to substantiate that she indeed experienced difficulty concentrating as a result of her concussion. *Cf. Jeffries*, 2012 WL 4344197, at *12 (finding the

9

plaintiff's testimony, coupled with medical records, to be sufficient to create a question of fact as to whether he met the definition of disability under the ADA). She thus fails to establish that she was "significantly restricted as to the condition, manner or duration under which she can perform" any major life activity. *Parada*, 753 F.3d at 68.

Samuels has failed to establish that she was disabled within the meaning of the ADA, and thus cannot make out a *prima facie* case of ADA discrimination or failure to accommodate. Accordingly, the motion for summary judgment is granted with respect to those claims.

## II.     ADA Retaliation Claim

Samuels next asserts that UACS unlawfully retaliated against her by terminating her employment in response to her request for reasonable accommodation, in violation of the ADA.[3] To establish a prima facie case of retaliation, Samuels must show that (1) she participated in an activity protected by the ADA, (2) this participation was known to UACS, (3) UACS subjected her to a material adverse action, and (4) a causal connection existed between the protected activity and the adverse action. *Belanger v. New York Univ.*, No. 21-CV-01644, 2025 WL 963308, at *24 (S.D.N.Y. Mar. 31, 2025). Under the *McDonnell Douglas* framework, "[i]f a plaintiff makes out a prima facie case of discrimination, the defendant must produce evidence supporting an explanation for the termination which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." *Turner v. Delta Airlines, Inc.*, 658 F. Supp. 3d 123, 132 (E.D.N.Y. 2023). If the employer proffers a legitimate, non-discriminatory reason for termination, "the presumption of discrimination drops out of the picture, and the plaintiff bears the

---

[3] To assert this claim under the ADA, the plaintiff need not show that she was disabled under the meaning of the ADA. Rather, she must only "possess[ ] a good faith, reasonable belief that the underlying challenged actions of the employer violated the law." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002). UACS does not challenge Samuels's good faith belief, and the Court's finding that she was not disabled within the meaning of the ADA does not preclude her retaliation claim.

burden of demonstrating by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Cantres v. N.Y.P. Holdings, Inc.*, 14-CV-7257, 2016 WL 5867046, at *4 (E.D.N.Y. Sept. 30, 2016).

As an initial matter, the Court finds that Samuels has established a prima facie case of retaliation. "Requesting a reasonable accommodation for a disability constitutes a protected activity under the ADA." *Dolac v. Cnty. of Erie*, No. 20-2044-CV, 2021 WL 5267722, at *2 (2d Cir. Nov. 12, 2021) (summary order). UACS does not dispute that it was aware of Samuels's accommodation request, nor that her termination qualifies as an adverse action. Regarding the fourth prong, the close temporal relationship between Samuels's accommodation request and her termination—six days—is sufficient to establish causation. *See Rivera v. JP Morgan Chase*, 815 F. App'x 603, 608 (2d Cir. 2020) (summary order) ("Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action.") (collecting cases).

Nonetheless, UACS insists that it terminated Samuels based on: (1) her decision to report the June 9, 2022 incident to the police; and (2) her lack of communication following her initial request for leave. Mot. at 10. This rationale is consistent with the reasons provided to Samuels at the time of termination, *see* Soller Decl., Ex. I, and is otherwise supported by the record, as set forth below.

Regarding the first reason, in Noah's deposition, he testified that he decided to terminate Samuels because she filed a police report "under what [he] deem[ed] to be outrageous and inappropriate circumstances demonstrating extremely poor judgment." Soller Decl., Ex. J ("Noah Dep.") at 139, ECF No. 70-13. He further explained that he viewed her actions as a threat to the

11

school's community, because she "called the police on a student without telling anyone for something that was unwarranted," which "caus[ed] students to be involved in the criminal justice system unnecessarily." *Id.* at 74–75. This, in his view, had the potential to lead students "to feel afraid to come to school," as well as to make parents reluctant to send their children to the school. *Id.* With respect to the second reason, Noah testified that he would not have terminated Samuels had she responded to his June 11, 2022 request for further documentation and a meeting. *See id.* at 123, 139. He explained that he "expected some response," and "to be able to engage in some conversation," *id.* at 117, and that her lack of communication "suggested . . . that she was not interested in any kind of dialogue," *id.* at 124. These reasons are corroborated by the testimony of other UACS employees. *See* Soller Decl., Ex. K ("Lopez Dep.") at 30–31, 62, ECF No. 70-14; *id.*, Ex. L ("Alder Dep.") at 66–70, 80–81, ECF No. 70-15. Accordingly, UACS has met its "burden to articulate some legitimate, nondiscriminatory reason" for the termination. *Klein v. Brookhaven Health Care Facility*, No. 17-CV-4841, 2023 WL 7413838, at *7 (E.D.N.Y. July 20, 2023), *report and recommendation adopted*, 2023 WL 6619377 (E.D.N.Y. Oct. 11, 2023), *aff'd*, No. 23-7771-CV, 2024 WL 5074485 (2d Cir. Dec. 11, 2024). The burden therefore shifts to Samuels to prove that UACS's proffered reasons were a pretext for discrimination. *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 168 (2d Cir. 2014) (per curiam).

To establish pretext, a plaintiff must show "that retaliation was a 'but-for' cause of the adverse action, and not simply a 'substantial' or 'motivating' factor in the employer's decision." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). "This but-for reason need not be the only cause for the employer's action; however, the plaintiff must show that the adverse action would not have occurred in the absence of the retaliatory motive." *D'Andrea v. Nielsen*, 765 F. App'x 602, 605 (2d Cir. 2019). "[T]emporal proximity alone is not enough to establish

pretext." *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 254 (2d Cir. 2014).  Instead, "[a] plaintiff may prove that retaliation was a but-for cause of an adverse employment action by demonstrating weaknesses, implausibilities, inconsistencies, or contradictions in the employer's proffered legitimate, nonretaliatory reasons for its action." *Zann Kwan*, 737 F.3d at 846.  Additionally, "an inference of pretext may arise where an employer's deviation from its procedures results in the challenged employment decision." *McGuire-Welch v. House of the Good Shepherd*, 720 F. App'x 58, 61 (2d Cir. 2018) (summary order).  "From such discrepancies, a reasonable juror could conclude that the explanations were a pretext for a prohibited reason." *Zann Kwan*, 737 F.3d at 846.

Samuels does not offer any direct evidence that she was terminated in retaliation for her request for leave.  To the contrary, in support of her NYLL § 740 claim, she argues that her "protected police report"—and not her leave request—"was the driving factor behind her termination," Opp'n at 7, a concession that severely undermines her ADA claim.  Nevertheless, she attempts to establish pretext with respect to her ADA retaliation claim based on temporal proximity in combination with (1) purported inconsistencies in UACS's stated reasons; (2) Noah's statements and actions following the June 9, 2022 incident; and (3) UACS's purported deviation from its policies and procedures.  The Court addresses each in turn.

First, Samuels argues that UACS's proffered reasons are pretextual because the June 16, 2022 termination email stated that she was terminated for an additional reason—attendance issues—which UACS does not now advance.  "[P]retext may be found where defendants provided plainly contradictory explanations for their actions." *Harrow v. St. Luke's Cornwall Hosp.*, No. 09-CV-7847, 2011 WL 13383216, at *5 (S.D.N.Y. Mar. 29, 2011), *aff'd*, 485 F. App'x 488 (2d Cir. 2012).  However, "in order to infer pretext for a retaliatory motive from multiple justifications,

a defendant's nonretaliatory justifications must be not merely different, but inconsistent with one another." *Richardson v. Bronx Lebanon Hosp.*, No. 11-CV-9095, 2014 WL 4386731, at *16 (S.D.N.Y. Sept. 5, 2014)

Here, the reasons put forward by UACS "are properly understood as multiple facets of a consistent rationale, rather than conflicting or contradictory accounts." *Id.* at *18. The termination email stated that the school's decision was based on "concern for the safety of [UACS's] students and families" and her "lack of communication," as well as "the several attendance issues [she] had in recent weeks." Soller Decl., Ex. I. As discussed, Noah testified at his deposition that his decision to terminate Samuels was motivated primarily by her response to the June 9, 2022 incident and her lack of communication following her initial request for leave. He further testified that incidents in which Samuels "disappeared without telling anyone during time that she was still supposed to be at work" played a "very limited" role in the termination decision, and that he "probably" would have terminated her nonetheless. Noah Dep. at 137. UACS's proffered reasons have thus remained largely consistent over time. To the extent they have shifted, they "are not overtly self-contradictory[,] and they are not sufficiently inconsistent to raise a genuine issue of fact with regard to the credibility of [UACS's] assertions." *Harrow*, 2011 WL 13383216, at *5.

Second, Samuels contends that Noah's decision to disable her access to the school's electronic systems and the statements in his June 11, 2025 email support an inference of retaliatory intent. The Court finds these arguments unpersuasive. With respect to Samuels' system access, it is undisputed that Noah disabled her account on the afternoon of June 9, 2025, before she requested leave, 56.1 Counterstatement ¶ 142, and that action thus does not give rise to an inference of retaliation, *see, e.g., Pickett v. Baldwin Union Free Sch. Dist.*, No. 13-CV-3527, 2016 WL 1714928, at *3 (E.D.N.Y. Mar. 21, 2016) ("There can be no inference of retaliatory animus where

14

the adverse employment action occurred prior to the protected activity."). Nor does Noah's June 11, 2025 email support such an inference. In seeking to establish pretext, Samuels relies on a single statement: "I'm not sure why you are doing this, but if it's just to avoid coming to work, let's please talk." Soller Decl., Ex. F, ECF No. 70-9. In the rest of the email, however, Noah disputes Samuels' version of events, accuses her of making a "bad faith assault claim," and urges her to "come to some agreement that doesn't involve ruining a child's life with a felony charge"—all of which support UACS's proffered reason for the termination. *Id.* Thus, considered in context, Noah's single statement questioning Samuels' motivation is insufficient to establish that retaliation was "more likely than not . . . the real reason" for the termination. *Giurca v. Good Samaritan Hosp.*, No. 19-CV-7761, 2023 WL 254611, at *11 (S.D.N.Y. Jan. 18, 2023); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) ("In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of [retaliation].").

Finally, Samuels argues that UACS deviated from its policies and procedures by: (1) disabling her access to the school's electronic systems; (2) failing to document its investigation of the incident; and (3) requiring additional medical documentation to support her request for leave. "[A]n inference of pretext may arise where an employer's deviation from its procedures results in the challenged employment decision." *McGuire-Welch*, 720 F. App'x at 61. The Court finds Samuels' arguments pertaining to her system access unpersuasive for the reasons discussed above. With respect to the other purported deviations, even assuming Samuels' contentions to be true, she has failed to adduce any evidence to establish that these purported deviations *resulted* in her termination. To the contrary, the record reflects that Samuels was not terminated for failing to provide additional documentation, but instead for her general lack of communication together with her filing of the police report. *See, e.g.,* Lopez Dep. at 30–31; Alder Dep. at 80. Moreover, absent

15

other evidence of retaliatory animus, procedural irregularities alone are generally insufficient to establish pretext. *See, e.g., Riccobono v. Crew*, No. 00-CV-5386, 2010 WL 11602749, at *10 (E.D.N.Y. Sept. 10, 2010) ("Here, however, Plaintiff has no evidence pointing towards race discrimination, and the procedural irregularities do not do so by themselves.").

Samuels has thus failed to establish that UACS's legitimate, non-discriminatory reasons for her termination amount to a pretext for ADA retaliation. Indeed, as her arguments in support of her NYLL § 740 claim make clear, the only direct evidence of Defendants' motivations suggests she was terminated for filing a police report and thereafter failing to communicate with UACS officials, not for requesting ADA accommodations. *See* Opp'n at 7. Accordingly, the motion for summary judgment is granted with respect to the ADA retaliation claim.

### III.   State Law Claims

Because the parties in this action are not diverse, this Court has jurisdiction over this action only by virtue of Plaintiff's federal claims. *See id.* §§ 1332(a), 1331. Pursuant to 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction "if it has dismissed all claims over which it has original jurisdiction." "In determining whether to continue to retain jurisdiction, district courts consider factors such as judicial economy, convenience, fairness, and comity." *Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 624 (S.D.N.Y. 2010). Here, those factors weigh in favor of declining jurisdiction and dismissing Samuels's state and city law claims. *See, e.g.*, *Hsueh v. N.Y.S. Dep't of Fin. Servs.*, 15-CV-3401, 2017 WL 3671179, at *8 (S.D.N.Y. Aug. 24, 2017) ("Because the Court grants the [defendant's] motion for summary judgment on [the plaintiff's] sole federal-law claim, the Court declines to exercise supplemental jurisdiction over [the plaintiff's] state-law claims."); *Thomas v. Ariel West*, 242 F. Supp. 3d 293, 306 (S.D.N.Y. 2017) (granting summary judgment dismissing the plaintiff's federal

claims and "declin[ing] to exercise supplemental jurisdiction [over the] Plaintiff's state- and city-law claims relating to those alleged violations"). The Court does so without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment with respect to Samuels's ADA claims—the only federal claims in this case. Samuels has not established that she was disabled within the meaning of the ADA, and the record makes clear that UACS terminated her in large part for filing a police report against a student and thereafter failing to communicate with the School—but not for requesting ADA accommodations. Accordingly, the motion for summary judgment is granted with respect to the ADA claims. The Court declines to exercise supplemental jurisdiction over Samuels's state and city law claims, which are dismissed without prejudice. It will be for the New York courts to determine whether Defendants' conduct is actionable under New York law.

The Clerk of Court is respectfully directed to terminate all pending motions and close this case.

SO ORDERED.

Dated:   June 26, 2025
         New York, New York

_____
Ronnie Abrams
United States District Judge